v. Attorney General's Office needs to retain its file in this matter and that it's retroactive also. I don't think it needs to say that it's retroactive because the protective order as it stands covers all discovery. I don't think it's retroactive. Scalia, you want us to interpret the order as being retroactive? Essentially, just to cover all discovery, yes. Oh, I'm sorry. Go ahead. Well, but that also means that you have to say that because Judge Rohl was there, all right, and Judge Rohl, in his modified order, said it wasn't retroactive, so we have to find that he abused his discretion in interpreting what he said in the first place, right? Yes, Judge. So we know more than he does about what he meant. I think that we can't really look into what Judge Rohl meant in his head when he issued it. I think the only things we can look at are the protective order itself. And if you look at the plain language of the protective order, it covers all discovery. And at the time that it was entered, there was no further discussion about any other parameters or limitations. The Attorney General's Office made no objections to the entry of the protective order. As Biddeker discusses, if the Attorney General's Office was opposed to the protective order, it would have declined to engage in the discovery process or returned the discovery that was implicated. There were lots of things that could have happened before if the intent of this protective order was different than the four corners of the document. And none of those things happened. I mean, the terms of the protective order itself were the same. But one of the things that happened after that is that you did this in a public courtroom, right? You didn't lock the public out. You didn't do things under seal. So that doesn't seem that you behaved consistent with that it covered everything. And, Your Honor, I think that's an issue squarely covered by Biddeker, that this wasn't the case. So Biddeker covers privileged and nonprivileged is your interpretation of it. Well, I think that it covers, as the order in Biddeker, whatever the language of the order was, which the language of the order in Biddeker. But was anything in Biddeker nonprivileged material? I'm not sure. I don't know if they discussed that. But the order at issue in Biddeker also said all discovery. It had the same terms as the order that was issued here. Kennedy. Let me follow up on a question Judge Schroeder asked you. I don't know whether this is what Judge Schroeder had in mind, but are you seriously pursuing any issue other than the one we've been discussing? Are you seriously concerned about sanctioning the Attorney General? You know, Your Honor, no, I would say. I mean, I think the problem we have here is that, you know, we understand that there are inadvertent disclosures could have happened. I think, you know, we've accepted even in the prior proceedings in this Court that the disclosure may well have been inadvertent. I think the problems we have brought up regarding the Attorney General's behavior are things that have occurred after the violation itself, including the fact that the motion to modify the protective order was filed without any mention of the fact that there had been a violation already, and also the filing of Ms. Nigro's affidavit, which we believe is at least one incorrect statement, which is something that we pointed out to the district court, but the district court did not discuss. So, you know, really, all we really want here, you know, we're not concerned with doing anything to punish the Attorney General's office. All we're really asking for here is that the protective order be upheld. Sotomayor, we wouldn't be here if there hadn't been a violation, would we? No. So that has to factor in in some, to some extent, as to what we're doing here. Well, I think it's sort of a secondary asking for any further punishment, but that doesn't mean that this whole proceeding is divorced from sanctions and it's about something else. I think you're right, Your Honor. I mean, the motion to modify was filed after the Attorney General's office was alerted that they had violated the protective order. So that's what started the proceedings. But we're really not, we're not trying to be punitive. All we're trying to do is protect Mr. Lambrey's rights and allow the resentencing to go forward. Ginsburg, are you truly arguing that the existence of a, of a, of a protective order is entirely within the discretion of the district court? I'm sorry, Your Honor. I'm not sure I quite understand. I was confused about your colloquy with Judge Callahan on the abuse of discretion standard. There are you are, I didn't think you were suggesting from reading your papers that you, that a protective order is solely within the discretion of the district court. It doesn't have to be any. No, not at all, Your Honor. Just that the, this Court reviews it for an abuse of discretion. The issue is that. So an abuse of discretion includes an error of law, right? Yes. And Judge Schroder's question is, is it an error of law for the district court not to enter a protective order, even retroactively? Well, I think in this case the question is modification of an existing protective order, and I think that the modification of the protective order constituted an error of law. And you read the protective order as being retroactive? Yes. And at least in terms of I think what the Court. Just to cover you. Exactly, yes, yes, Judge. And you say the modification of that is an error of law? Yes. Okay. If there's no further. Do you want to save your minute and 39 seconds? Please, if that is possible. Thank you. May it please the Court. My name is Ginger Jarvis. I am the Assisting Attorney General in the Attorney General's Office, assigned to represent the State of Arizona in this case today. To answer your question, Judge Schroder, as to why exactly we're here this morning and this afternoon, it is whether or not, as Judge Callahan pointed out, the district court abused its discretion in modifying the protective order that it issued in September of 2003. So the protective order as it stands now protects only the defendant's supposition, which is what it was all that was contemplated to cover. So when was did the State's counsel first recognize the breadth of the September 23rd, 2003 protective order? Do you mean to the extent that it didn't include the word privileged? Well, it didn't, yes. Yeah. You know, I really can't answer that because I don't know. I mean, there's been several attorneys assigned to this over time, and I don't know that anybody caught that it didn't have the word privileged in it when it was issued. But it was clear both from the discussion, both from the, first of all, the defendant's motion, defendant's counsel's motion in district court, and from the discussion at the oral argument about the issuance of the protective order that we were talking about, potentially incriminating statements about, you know, defendant's statements that he would be forced to or compelled to answer in the course of litigating his ineffective assistance of counsel claim. So therefore, it was only the State's counsel's motion that he was forced to answer. Well, was it around his deposition, or was it around his talking to experts, or what was it around? It was only about the deposition. It was only about the State's attorneys deposing the defendant about the crime and his commission of the crime, because those are the only statements that would actually be privileged. Those are the two in order. I mean, that's what Biddeker is really all about. When Biddeker talks about how the fairness principle that Biddeker discusses is that you can't raise an effective assistance of counsel claim and then say to the State, oh, but you can't ask me about anything I said to my attorney, my trial attorney, or anything that the trial attorney and I talked about. Those communications are privileged. Well, then how could the State adequately discover whether or not there was, in fact, an effective assistance of counsel? Scalia I didn't think this case had to do with the State's right. Well, that's why I'm just talking about what Biddeker discusses. So Biddeker says to the extent that that is the issue, then the defendant waives his attorney-client privilege. So the extent of the protection that Judge Rohl gave the defendant was the protection of those statements, of the State's attorneys then finding out his statements about the crime or statements to his counsel about the crime. Because that would be what would be unfair if we go back to trial and the State now has evidence it didn't have before. I mean, for example, let's say that in the course of the case that Biddeker And that's what I was asking Petitioner's counsel, that they want to, like, I said, do you want to suppress this for all purposes, like nothing ever, that anything in the habeas proceeding just never happened? And so when you go back to when you have your jury on sentencing, that essentially an appellate court has already said that none of this can come in, and there's is fruit of the poisonous tree if you find out, if you try to develop it otherwise. So if the court were to say that the judge abused his discretion and that the 19 the 2003 order was, in fact, retroactive, what would that, what would the effect of that, and it covers privileged as well as non-privileged, everything that happened, essentially, what's the effect of that on your prosecuting in the penalty phase? Okay. Let me see if I understand your question. Your question is if, well, what they're asking for, how does that affect you in prosecuting the penalty phase, if that were, if the court were to grant that? It covers everything from privileged and unprivileged. If you're not the party prosecuting, the problem is whether you can turn it over to the county attorney, right? Well, you're right. The attorney general's office will not be conducting the resentencing if that's your point. But if you can't turn anything over, I'm trying to see this in the, if nothing can be turned over, and they seem to be saying that you can't other, even though they already know some of it anyway, and there's things that happened in the proceedings, what, you know, what would be the effect of if this court were to say that that order was retroactive, the original, or that, you know, Judge Roll abused his discretion, and he couldn't modify the order to say just privileged, and so that order that was in effect on September 23rd also goes back to everything that had occurred before, what is, what does that mean? What does that mean for Pima County? Yes. Well, there was an evidentiary hearing. You're correct. So there are six days and numerous exhibits that would not be covered, even under that expansive protective order, if, in fact, the protective order as, if, in fact, you find that Judge Roll abused his discretion, and you want, in modifying it, and the protective order of 2003 includes retroactive and prospective discovery, any discovery that came out, including the State's own investigation, that is in excess of whatever was admitted into open court would then not be go, not be able to be turned over to the Pima County Attorney's Office, and the Pima County Attorney's Office would have to recreate all that discovery, which is one of the, you know, duplicative discovery. But I'm sort of hearing that they wouldn't necessarily be able to recreate it if they only found out from what they weren't supposed to have. I'm hearing them say that. Okay. I'm not sure I understand what you're saying. Well, there's things that they know, or there's things that occur, but I think that they're saying that you can't recreate it if you found, if you learned it from what should have been protected. Oh, I see what you're saying. So that even if they would even be prevented from discovery, anything that came from possibly something they didn't know before. I've seen that argument down the line. Well, and I, I, that's just, that carries Biddecker far, far further than Biddecker was ever intended to go. Biddecker protects only, to the extent that you raise an ineffective assistance of counsel claim, you waive your privileged communications with your counsel, or if you answer any questions in the course of that about the crime or the commission of the crime, and that's all we're talking about, because that's the, if somehow the State learned something it didn't know before, and we go back to a sentencing phase. But I'm hearing, when I asked counsel for the Petitioner about whether Biddecker was only talking about privileged information, I heard her say it didn't say that. It does say that. I, I disagree with her on that score. I mean, if you read Biddecker, Biddecker's talking solely about the small contours of that waiver and that the contours of that waiver are very narrow. Kagan. So even if it doesn't use the words specifically, you're saying the evidence that they were considered was all privileged. The evidence that — Well, in Biddecker, what they were talking about, everything was privileged. So it was of that nature. Right. Well, because it's about the defendant's statements about the crime or commission of the crime and or his, you know, or counsel's, if he, if we, if the State deposes trial counsel and finds out about state issues. So you're saying that they're reading Biddecker too broadly? Way too broadly, yes, Your Honor. I agree with that. Okay. What issue is the discovery that we're talking about directed to? Because I'm getting confused now. Well, the broader, the broader scope of the discovery was about mitigation evidence, and mitigation evidence that was allegedly out there that, that counsel wasn't effective for not finding and for not presenting. So it's all evidence that he actually wants to present in trial court anyway. So this is all, this is all the evidence that the defendant wanted to have had presented at the first sentencing, which wasn't. And that's, that's the scope of the larger discovery. But in the course of litigating that — What's the harm of the order, then? Why are you objecting to it if it's all there that they're going to present? I'm, I'm not objecting to the — what am I not objecting to? What am I objecting to? I'm saying the trial court did not abuse, or the district court did not abuse its discretion by modifying that expense of protective order to include only what he intended it to include in the first place. And in, and actually, Your Honor, the defendant in both the deposition and in the evidentiary hearing didn't make any statements that fall under the Biddeker rule anyway. So — Well, but let's say he had — you know, I'm sort of thinking that if you — I mean, I wasn't involved in the case originally, but just from what I can ascertain, Mr. Lambright confessed, I believe, and that — was Mr. Smith his co-defendant? Yes, ma'am. And that he confessed, but they had separate juries because of those confrontation issues. Yes. And that Mr. Lambert's girlfriend didn't appear to be a terribly loyal girlfriend when things broke bad for her, and so she testified against both of them. And so, but now that — so there were certain fairly damaging statements that came in relative to that about whether they had premeditated this, whether that they — that he just wanted to see what it would be like to kill someone, and the other person wanted all of that. But now the mitigation is going to — he's — has post-traumatic syndrome or something along those lines, and he's claiming that it stems from something that he saw in the service. Now, some of the stuff that came out here, it appears that a person's identified that — that now, if that were not — if that's privileged or if it's suppressed, I think eventually they have to notice everything that they're going to probably put on in the penalty phase, and — but you could now, if it's not — if you can't have access to it now, it — right now, you could probably — you could cut — you could look into that and find out that there was someone named Nieder — Niederheit or something like that. I believe it was Neidhardt. Neidhardt, that if — let's say that person's really alive, or if there are certain things that there's — there's certain things about that that the prosecutor would probably want to prove that this incident didn't occur and that he's lying about it, and so therefore he doesn't really even have it. I think that the suppression has something — I think that making it cover all of that has something to do with whether — what they can do before the penalty phase. I don't want to be — I don't — I mean, none of that is privileged. None of that is privileged. But they're — but I think that they're claiming that even though it occurred in the public trial, they were relying on the fact of that order, so therefore it is privileged. Well, but as Judge Rohl pointed out, there are several things to indicate there was no reliance on that. First of all, both the defense counsel and the State — All right. But if we say he abused his discretion, then that isn't the ruling anymore, right? So I think that's — I'm not sure that — I'm thinking they're asking for something that you're not saying they're asking for, and so maybe I'm wrong, but — They're asking for something that isn't permitted by law, nor was it permitted by Judge Rohl and wasn't his intention. And there isn't any — Judge Rohl has said in his subsequent ruling that we're here talking about whether he abused his discretion on it. That's not what he intended. He didn't use the word privileged.  Concede that. Moreover, he points out — So what is your best authority for the proposition that the protective order only covered privileged materials? Well, there was the discussion on the oral argument. There was also the defendant's own motion asking for the protective order. The request for the protective order was for the deposition of the defendant and statements that he might make about the crime or the commission of the crime. So let's say in a deposition he actually refused to answer all those questions. But let's say he had said, oh, yeah, I told the police this, but what I didn't tell them was, you know, not only did I stab her here, I also cut off her nipple, and that was aggravation evidence that the State didn't know before. That would be privileged information. Or if he said, in addition to us playing, you know, we are the champions on our way away from this crime, we also play, another one bites the dust. Well, the State didn't know that before. That would be privileged information. That's what was being intended to be protected, because then it's unfair for the State to go back with new information it didn't have. It wasn't supposed to include all this extraneous discovery and investigating the State's own investigation. Who finds Mr. Neidhart living alive in a well in Alabama? And you are — One, you don't deny that anything you learned that's privileged after the date of the order should not be turned over to the county. Anything privileged either before or after. Well, Judge Rutter has a good point, that if it were privileged, it would be — it would be protected anyway, but particularly after the date of the order. And that — and the date of the order — But what do you mean, particularly? I mean, you say it's privileged at any — that's your position? Yes. Okay. But the — the date of the order is relevant to reliance. Will you please wait a minute? So you agree that any privileged material, both before and after the date of the order, may not be turned over to the county? Sir, any statements made by the defendant or his counsel's statements about the crime or the commission of the crime, yes, to that narrow extent, yes. Any privileged material. Whatever — I don't — That would only be the — that would be the only thing that would be privileged. Whatever it is, you agree that privileged material may not be turned over to the county? Right. Okay. So the only — what you're objecting to is non-privileged material. Well, I'm saying Judge Rohl didn't abuse his discretion, so I'm not objecting to anything that we're here actually about today. If you're going to say he abused his discretion, the discovery beyond any privileged materials, yes, is not privileged, and so therefore is not under any — So the only issue, then, is — is non-privileged material. Correct. Well, there's no — But there was — The only issue is whether or not Judge Rohl used his discretion. But there was arguably things that he said before the date of the order to experts. But, Your Honor, that is the risk of bringing the IAC claim. If he's going to bring an IAC claim and put his mental health at issue, as you pointed out earlier, then that — then you can't use it as a shield and a sword. He can't claim that. No. He cannot claim that as a privileged material. Under your — but they are saying that they can. That's what they're saying. Right. If you don't want to have mental health experts, then don't raise your mental health as an issue. That might be a tough choice, but that's not an unconstitutional choice. You have to make that choice. The thing that we're trying to protect is that if in — in pursuing an ineffective assistance of counsel claim, in — in exposing what may have been an unconstitutional proceeding before, that you waive your attorney-client privilege, and you waive that only to the extent of the waiver, which is what Bitterker talks about. It's a very narrow waiver, so therefore, the protection is very narrow. So the protective order was only to cover the statements he makes about the crime or the commission of the crime, and that was clear for both the Vennett's motion. His deposition. And the deposition. And also, at the time of the trial, or at the hearing, when — when State's counsel proceeded to ask a bunch of questions about the crime and the commission of the crime, Judge Rohl actually extended it to include his evidentiary hearing testimony, which was news to the defense counsel. Everybody thought that this protection was only — only for his statements to his counsel or statements about the crime or the commission of the crime. That's as far as the protection goes. That would be the only thing that is protected. Okay. So what are you worried about if — I'm just quite — not quite sure I understand what's at stake here. He doesn't get to do all of this and then put a cone of silence over the district court what happens in court. Do all of what? And then send it back and get to do it all over again. All of that discovery, all of that, all of — none of it is — none of it is privileged. And it's all — none of it is privileged. And, in fact, nothing that he actually did in the deposition or in the — what he sought to protect, he didn't actually do anyway. He didn't answer any questions about the crime or the commission of the crime. He didn't answer — neither did his counsel. So in terms of returning to his position at trial, the concerns of Bittker are met here. The State's not going back with any new evidence about the crime or the commission of the crime that might be relevant in a sentencing proceeding, because even though we have a guilt verdict, a sentencing proceeding is also the crime and the facts and circumstances of the crime are also relevant in a sentencing proceeding for both aggravation and — Sotomayor, just as an example, if in the — in the discovery, there were — I take it this is — this is directed and, in effect, this is what would have been brought out in a sentencing hearing? Is that part of what's — Of what happened in evidentiary at the Federal court? Yes, it is. It is — it is all designed to decide whether or not if counsel at sentencing was ineffective for not finding and or presenting this potential alleged mitigation evidence that's out there. Now, the mitigation evidence that they discover, presumably, if there isn't a new sentencing, they can use it. Who could use it? The defense. If they — if they find — if there's a — well, they can use the mitigation. Yeah. They're sure that's what they want to do. They want to present it to a jury. Sure. That's exactly what they want to do. That's the point here. Yes. Okay. So if they discover some stuff that's not so good for them, then your — is that your point, that you ought to be able to use it to the jury, and that it's not protected because they're doing this by virtue of waiver of the privilege? Well, are you saying — I don't know. I'm trying to figure out what — Are you saying that if they — they do some — If they — if the discovery brings out some material that is not very good for the defense — And it hasn't been brought out in the evidentiary hearing in Federal court or in a post-conviction relief proceeding in court otherwise, or otherwise disclosed to the State? Yeah. Is that what — If they have developed, you know — well, if they've developed things that they haven't presented or disclosed — you know, haven't presented in court or don't plan to present in court, well, I don't know that we have — I don't know. First of all, that even covers any of the protective order. But second of all, if you're talking about in — in superior court now, are you talking about they go back to Pima County and develop new things, find new doctors? I'm just trying to figure out what you don't want to be covered by the protective order because you want to — because the State might want to use it. That's all I'm trying to figure out. Everything — all of the non-privileged — You're saying everything. Give me an example of what might be hurtful, prejudicial to you. All right. They present that they have all the PTSD evidence, and then the State has doctors and has interviewed — you know, all of those depositions, all of that should — none of that is protected. All of that can be presented in the Pima County superior court, should they choose to present that as mitigation again, or for the first time in superior court. But they are concerned that the State has had a trial run at what they want to present in Pima County superior court in a resentencing proceeding. But they've also had a trial run. They just want to use their trial run and not let Pima County have the benefit of the State's already investigation and discovery. None of that is privileged. What discovery, if any, was conducted in the habeas proceeding following the entry of the September 23, 2003 protective order? That's a good question. Between November of 2003 and the November. And the November — I know the deposition happened. I don't know. I think most — I mean, according to the oral argument, about 80 percent of the discovery had already happened before that point. I mean, in November, when you're looking at a December entry. But you don't know either, based on your records. Based on my — I mean, as you all know, the record is voluminous. The crime in this case happened in 1980. So I was not at the office at the time, and I don't know precisely. Other than the defendant's deposition. Neither side knows what was there. Other than the deposition, I know for sure, Your Honor. And that, of course, is still protected by the protective order. So — and that's the only thing that was designed to protect the protective order. Moreover, he didn't even say, as I said, any — any incriminating statements about the crime or the commission's crime in his deposition. So even protecting the deposition. Okay. Judge Rohl said that it was not to be — it was not retroactive. Yes. And so give me your best argument why that is not an abuse of discretion. Well, to begin with, it wasn't — nobody at the time expected it to be retroactive. As I've said repeatedly, and as the record shows, it was just about the State deposing the defendant. So it wasn't about anything else. It wasn't about all the discovery that had already happened that he freely engaged in. There was no reliance on it. He presented all of it in evidentiary hearing. And he didn't even rely on it to the extent that he still refused to answer the questions, both in the deposition and at the hearing, that — about the crime or the commission of the crime. Okay. The Court has no further questions. I have very little time left, so I'd just like to make a couple quick points. Well, we'll give you an extra minute to even it out. Thank you, Judge. I appreciate that. Most importantly, Respondent's counsel keeps saying that Mr. Lambrecht can't — he can't have had these — or these habeas proceedings and then, you know, get to have a preview of his case. But Bitteker — that's exactly what Bitteker says. Bitteker — the plain language of Bitteker and the plain language of this Court's remand order instructed the district court to consider the fact that Mr. Lambrecht needed to be put back in the position he would have been absent the constitutional error. Mr. Lambrecht, in pursuing the fact that his constitutional rights were violated, which this Court found, the Supreme Court denied cert, he's back in State court for resentencing. You can't claim that you have a mental defense and then say that no one — you can't use it as a sword and a shield. That's a correct statement of the law. If you bring your mental health into question, you're going to be cross-examined about it. You're going — you know, the other side's going to have to know about it. And you didn't — and all of those experts, when he was going to those experts, he was represented by counsel, and no one ever brought anything for a protective order. It wasn't until the deposition. But, Your Honor, in State court, he's also represented by counsel, as is the State of Arizona. And at this point, because the proceedings have been stayed, Mr. Lambrecht hasn't put his mental health at issue in those proceedings. And if he does, the State court will have every opportunity to do so. And he got habeas granted — habeas granted based on that. So what you're saying is that makes it so he gets to say all these things, he gets to get the death penalty set aside, and then, oops, never mind. Well, Your Honor, I don't know that it's — It doesn't exist. I don't think it's oops, never mind. I mean, his Federal constitutional rights were violated. And because he had to litigate habeas proceedings to prove that — Well, how are they — they were violated when he was seeking habeas? I mean, do you agree that if you want — you know, if you want to bring your mental state into consideration, if you want that to be a reason, then you open the door? In the habeas proceedings, he put his mental state at issue, and Respondents were able to rebut it. Okay. So what's your best authority to the fact without — there wasn't — no one requested anything limiting at the time, and the fact he — that he talked to those experts and that, you know, it went through. What's your best authority for the fact that you get to go back, sort of pro-tunct, and make it privileged? Biddecker, I think, is the best authority, Your Honor. All right. May I just ask you one final question? Of course. Are you objecting to the disclosure of anything other than what you consider privileged material? Are you objecting to any release of information by the State attorney to the county counsel? Your Honor, we have tried very hard to be reasonable in the district court. And we put forth a list in the district court proceedings of things we did not believe were privileged and that we were fine with being disclosed, and we stand by that. The only categories of documents that we're concerned about here are the ones we identified as either being privileged under the attorney-client privilege, that should be kept confidential because of the Fifth Amendment concerns. Well, how many of those are prior to the order? Again, Your Honor, that's not clear. Apparently, Respondent's counsel isn't — hasn't been able to establish that either. Neither of you seem to know the answer to that. No. I think then to be honest, we don't. But all right, let me just finish one question. You are saying that, what, the — you are objecting to the release of any privileged material, and what other kind of material? We've delineated three different categories, things that are privileged pursuant to the attorney-client privilege, things that should be kept confidential pursuant to the protective order because of the Fifth Amendment implications, and then pursuant to Bittker, things that should be kept confidential in order to keep Mr. Lambright in the position he would have been absent the constitutional error. All right. Thank you, counsel. Thank you, Your Honor. The case just argued will be submitted. The Court will stand in recess for the day.
judges: Schroeder, Reinhardt, Callahan